**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SUSAN OSTROWSKI,

Plaintiff,

v.

PRUDENTIAL EQUITY GROUP, LLC,

Defendant.

CIVIL ACTION NO. 3:03-CV-0459

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant's Motion For Summary Judgment (Doc. 44). For the reasons set forth below, the Court will grant Defendant's motion in part and deny it in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## BACKGROUND

Susan Ostrowski first began working for Prudential Equity Group, LLC ("Prudential") in 1985. (Doc. 1 ¶ 10; Doc. 47, Ex. 2 at 58.) In 1996, Ms. Ostrowski moved to Prudential's Wilkes-Barre office where she teamed with her father, Robert Ostrowski. (Doc. 1 ¶ 11; Doc. 47, Ex. 2 at 69). Mr. Ostrowski had been a Financial Advisor at Prudential for almost 40 years. (Doc. 47, Ex. 2 at 374-75.) Then, in late 1999 or early 2000, Carol Ostrowski (Ms. Ostrowski's sister) also joined the "Ostrowski team". (Doc. 47, Ex. 4 at 13-14).

In September 2000, David L. Capin became the Complex Manager for the Scranton and the Wilkes-Barre offices. (Doc. 1 ¶ 13; Doc. 47, Ex. 3 at 12-14). Mr. Capin was also a Financial Advisor with his own team during his tenure as Manager. (Doc. 47,

Ex. 3 at 13; Doc. 77, Ex. 2 at 52-53.)

In March 2001, Mr. Capin solicited applications from the Financial Advisors in Wilkes-Barre for a Financial Advisor In Charge ("FAIC") Position and a Qualified Delegate ("QD") position. (Ex. 8). Defendants submitted evidence that Ms. Ostrowski did not express interest in the FAIC position, but that she did ask to be considered as a QD. (Doc. 47, Ex. 2 at 114). Plaintiff submitted evidence that she expressed interest in both positions. (Doc. 1 ¶ 17.) Plaintiff was not promoted to either position. (Doc. 47, Ex. 2 at 115-17; Doc. 77, Ex. 2 at 77.)

Then, in July 2001, Prudential terminated Robert Ostrowski's employment. (Doc. 47, Ex. 3 at 438). Following the termination, Mr. Ostrowski's accounts were not distributed to all of the Financial Advisors in the typical fashion. *Id.* Rather, Ms. Ostrowski and her sister became responsible for Mr. Ostrowski's customer base. *Id.*

Shortly thereafter, Prudential closed its Wilkes-Barre office and consolidated that operation with the Scranton office. (Doc. 1 ¶ 20; Doc. 47, Ex. 2 at 128-30). Defendants submitted evidence that during the transition, the move to the Scranton office was difficult for all of the Wilkes-Barre employees. (Doc. 47, Ex. 3 at 413-14.) Plaintiff submitted evidence that she was initially excluded from the new office layout, only her direct telephone line did not work for over a week, and her calling card was later cancelled. (Doc. 1 ¶¶ 21-23, 32.) Furthermore, Plaintiff submitted evidence that Mr. Capin excluded her from conferences in May 2001 and Fall of 2001. (Doc. 1 ¶ 36.) In addition, Plaintiff submitted evidence that Mr. Capin refused to hire a new sales assistant for her in October 2001. (Doc. 1 ¶ 33.)

Plaintiff further submitted evidence that Mr. Capin stated on several occasions

that, "This is a man's business. It's a man's world." (Doc. 77, Ex. 3 at 29.) Plaintiff also submitted evidence that Mr. Capin "seemed to really resent Susan because she was a woman and because she was in a position of power." (Doc. 77, Ex. 3 at 24-25.)

Then, in March 2002, according to the evidence submitted by Plaintiff, Mr. Capin edited Ms. Ostrowski's advertisement submissions to "Today's Woman". Specifically, Mr. Capin eliminated reference to Plaintiff carrying "on the 40+ years of dedication and client service" of the Ostrowski Team, and Plaintiff's years of experience in the securities industry. (Doc. 77, Ex. 16, Ex. 17.) Furthermore, Plaintiff submitted evidence that during the spring of 2002, Mr. Capin refused to allow Tracy Zullo to join the Ostrowski team. (Doc. 47, Ex. 2 at 97-107.)

In September 2002, Mr. Capin returned to being a full-time Financial Advisor. (Doc. 47, Ex. 3 at 27, 31). Howard Buchler then became the Branch Manager. (Doc. 47, Ex. 5 at 9). Plaintiff submitted evidence that Mr. Capin and Mr. Buchler repeatedly referred to both Plaintiff and other women as "bitches". (Doc. 77, Ex. 5 at 36; Ex. 6 at 224.)

Lastly, Plaintiff submitted evidence that throughout 2001 and 2002, Tom Kish, the Administrative Manager, favored the distribution of accounts to male Financial Advisors. (Doc. 47, Ex. 2 at 295-98.) Further, Plaintiff submitted evidence that Mr. Capin was adamant that new accounts not be distributed to Plaintiff. (Doc. 77, Ex. 3 at 25.) Moreover, Plaintiff submitted evidence that Mr. Capin instructed Mr. Kish not to distribute accounts to Plaintiff. (Doc. 77, Ex. 3, at 31-32.) Defendant, on the other hand, submitted evidence that a computer system called "HARP" generated a list of the accounts held by departing Financial Advisors, which was then posted for each Financial Advisor to note

the clients with whom (s)he had a relationship. Defendants further submitted evidence that Mr. Kish then allocated accounts based upon the strength of the relationships between the Financial Advisors and clients. (Doc. 47, Ex. 2 at 296-97, Ex. 3 at 136-39.) As of August 2002, the HARP system became fully automated and distributed accounts in the order of the most productive Financial Advisors. (Doc. 47, Ex. 2 at 300-301.)

Effective July 1, 2003, Financial Advisors employed by Prudential became employees of Wachovia Securities. (Doc. 47, Ex. 2 at 8, 15). Ms. Ostrowski currently remains employed by Wachovia. (Doc. 47, Ex. 2 at 8).

On or about September 4, 2002, Ms. Ostrowski filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. (Doc. 1 ¶ 6.) Plaintiff later filed with the Pennsylvania Human Relations Commission on or about October 7, 2002. (Doc. 1 ¶ 7.) Then, on March 14, 2003, Plaintiff filed a Complaint with this Court alleging discrimination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONN. STAT. ANN. § 951, *et seq*. (Doc. 1.) Defendant filed the present Motion for Summary Judgment on September 15, 2005. (Doc. 44.) Oral Argument was held on the motion on April 26, 2006. (Doc. 74.) The motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONN. STAT. ANN. § 951, *et seq.* The Court will discuss these claims, as well as Defendants arguments for summary judgment below.[1]

**1. Statute of Limitations**

Defendant, first, argues that the majority of Plaintiff's claims are untimely filed according to the applicable statute of limitations.[2] Specifically, Defendant argues that Plaintiff's claims arising out of events prior to November 9, 2001, are barred for purposes of Title VII, and that Plaintiff's claims arising out of events prior to April 20, 2002, are barred for purposes of the PHRA. Plaintiff argues that her claims arising out of events prior to these dates are timely filed because they can be aggregated under a continuing

---

1 The Court notes that Plaintiff's PHRA claims are subject to the same analysis as her Title VII claims. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995); *see also Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). Thus, while the Court will discuss the merits of Plaintiff's claims under the framework of Title VII, the resulting analysis applies with equal force to Plaintiff's PHRA claims.

2 The applicable statute of limitations are three hundred (300) days under Title VII and one-hundred and eighty (180) days under Pennsylvania law. *See, e.g., AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002).

violations theory. For the following reasons, I find that Plaintiff cannot aggregate her claims under a continuing violations theory and, therefore, those claims arising out of events prior to the applicable statute of limitations are untimely filed.

**a. "Continuing Violation" Doctrine**

The Supreme Court of the United States, in *AMTRAK v. Morgan*, 536 U.S. 101 (2002). addressed the contours of the "continuing violation" doctrine. The *Morgan* Court "established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). Specifically, with regard to discrete acts the *Morgan* Court stated:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002). Furthermore, a non-exhaustive list of discrete acts can be taken from *Morgan* to include: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation. *O'Connor*, 440 F.3d at 127; *Morgan*, 536 U.S. at 114. Under *Morgan*, such discrete acts cannot be aggregated under a continuing violations theory.

*O'Connor*, 440 F.3d at 127.

Plaintiff asserts that she should be allowed to aggregate her claims, despite the distinction in *Morgan*, because she is alleging a “pattern-or-practice” of discrimination. Specifically, Plaintiff relies on a footnote in *Morgan*, which states, “We have no occasion here to consider the timely filing question with respect to ‘pattern-or-practice’ claims brought by private litigants as none are at issue here.” *Morgan*, 536 U.S. at 115 n.9. For the following reasons, I find that the claims raised by Plaintiff are not “pattern-or-practice” claims.

The Supreme Court of the United States has described the prima facie case of a pattern-or-practice claim as follows:

> Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that ‘[ ] discrimination was the company's standard operating procedure -- the regular rather than the unusual practice.’

*Cooper v. Federal Reserve Bank*, 467 U.S. 867, 875-76 (1984) (quoting *Teamsters v. United States*, 431 U.S. 324, 336 (1977)). In the present case, Plaintiff fails to allege that discrimination was Defendant’s standard operating procedure. Rather, Plaintiff alleges that she, individually, was subjected to a “pattern” of discrimination. This argument is nearly identical to the one rejected by the Supreme Court in *Morgan.*

In *Morgan*, the plaintiff, Abner J. Morgan, Jr., argued that the continuing violation doctrine had a statutory basis derived from the term “practice” in Title VII, which according to the plaintiff connoted “an ongoing violation that can endure or recur over a period of time.” *Morgan*, 536 U.S. at 110. The Supreme Court soundly rejected this

argument and found that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Morgan*, 536 U.S. at 111. Therefore, it is clear from the decision in *Morgan* that Plaintiff may not circumvent the applicable statute of limitations by aggregating discrete acts, even those that are related, into a single actionable "practice" or "pattern". As such, absent a hostile work environment claim, Plaintiff may not aggregate her claims.

**b. Hostile Work Environment Claim**

Once Plaintiff's filed a Charge of Discrimination with the EEOC, the scope of any resulting civil action must be "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Eaddy v. Pa Dep't of Pub. Welfare*, No. 04-5909, 2005 U.S. Dist. LEXIS 10851, at *5 (E.D. Pa. June 2, 2005) (citing *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir. 1978); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-399 (3d Cir. 1976)). In the present case, Plaintiff's Charge alleges that Mr. Capin "was discriminating against" Plaintiff through his "discriminatory behavior", "discriminatory treatment", and "discriminatory practices". (Doc. 47, Ex. 28 ¶¶ 11-14.) There is no mention in the Charge of a hostile work environment or harassment. As such, a hostile work environment claim could not reasonably be expected to grow out of Plaintiff's discrimination claims. *See, e.g., Torriero v. Olin Corp.*, 684 F. Supp. 1165, 1170 (S.D.N.Y. 1988).

Alternatively, Plaintiff argues that Defendant was placed on notice of the potential hostile work environment claim during its own internal investigation. Assuming such notice would be sufficient, Plaintiff is not mentioned under the investigation notes

concerning a possible hostile work environment claim. (Doc. 77, Ex. 19 at D002103.) Therefore, there is no evidence from which the Court could conclusively determine that Defendant was on notice of Plaintiff's intentions to raise a hostile work environment claim. As such, Plaintiff's claims are limited to her allegations of disparate treatment arising out of events which occurred within the applicable statute of limitations.

The only timely allegations raised by Plaintiff are that: (1) during the spring of 2002, Mr. Capin refused to allow Tracy Zullo to join the Ostrowski team; (2) in March 2002, Mr. Capin edited Ms. Ostrowski's advertisement submissions; (3) during 2001 and 2002, Mr. Kish favored the distribution of accounts to male Financial Advisors; (4) Mr. Buchler called Plaintiff a "fucking bitch" on at least five occasions; and (5) in May 2003, Mr. Capin made an obscene hand gesture at Ms. Ostrowski. Therefore, I will grant Defendant's motion for summary judgment with regard to all other claims raised by Plaintiff on the ground that they are untimely filed.

**2. Disparate Treatment**

One manner in which an employer violates Title VII is where it engages in the practice of singling out a member of a protected group for treatment less favorable than that received by other similarly situated individuals on the basis of an impermissible criterion. *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). In such cases of disparate treatment, proof of discriminatory intent is critical; "liability depends on whether the [impermissible criterion] actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v.*

*Biggins*, 507 U.S. 604, 610 (1993)) (internal quotations omitted). Due to the invidious nature of discriminatory conduct, perpetrators rarely provide plaintiffs with direct evidence of discriminatory intent. *See Metal Serv. Co.*, 892 F.2d at 347 n.6. Consequently, Plaintiff may sustain a Title VII claim by presenting either direct or circumstantial evidence of intent. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990). In the absence of direct evidence, Plaintiff must resort to the burden-shifting framework set forth in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973), to establish intent. *Weldon*, 896 F.2d at 796-97. However, in the rare instance where direct evidence of discriminatory intent is available, the case is analyzed under the mixed-motive framework set forth in the seminal case of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

**a. Direct Evidence**

When a plaintiff submits direct evidence of discrimination, the burden immediately shifts to the employer. *See*, *e.g.*, *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998). However, a plaintiff has a high burden to overcome to establish that she is presenting direct evidence. *Id.* The evidence must demonstrate that the decision maker relied upon an illegitimate criterion in reaching his decision. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 512 (3d Cir. 1997); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact [in issue] *without inference or presumption*." *Torre v. Casio, Inc.,* 42 F.3d 825, 829 (3d Cir. 1994) (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990)) (alternation and emphasis in original).

The Supreme Court of the United States has further articulated what fails to

constitute "direct" evidence, and has explained that:__

> [S]tray remarks in the workplace, while perhaps probative of sexual harassment, cannot justify requiring the employer to prove that its. . . [employment] decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiffs' burden in this regard.

*Price Waterhouse*, 490 U.S. at 277 (internal citations omitted); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002).

In the present case, the evidence submitted by Plaintiff fails to not meet this high standard. Although Plaintiff has submitted evidence of discriminatory comments and gestures, there is no evidence that these stray remarks and actions were made by decisionmakers in the course of the decisional process. Therefore, the evidence does not directly prove that Defendant discriminated against Ms. Ostrowski. Consequently, evaluation of Plaintiff's remaining disparate treatment claims must proceed in accordance with the *McDonnell Douglas* analytical framework.

**b. *Prima Facie* Case**

The burden-shifting framework set forth in *McDonnell Douglas* first requires Plaintiff to establish her *prima facie* case, which, if successful, raises an inference of discrimination. *Keller v. Ortix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993); *Weldon*, 896 F.2d at 797. Plaintiff may establish her *prima facie* case by showing: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination.

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). The Court must determine, as a matter of law, whether Plaintiff has satisfied her *prima facie* case. *Sarullo v. United States Postal Service,* 352 F.3d 789, 797 (3d Cir. 2003). Plaintiff, however, need only "produce evidence that is sufficient to convince a reasonable fact-finder to find all of the elements . . . ." *Keller*, 130 F.3d at 1108. After this initial showing, the burden of production then shifts to Defendant to “articulate some legitimate, nondiscriminatory reason for the adverse action.” *Metal Serv. Co.*, 892 F.2d at 347 (citing *Texas Dep’t of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In the instant matter, the first two prongs of Plaintiff’s *prima facie* case are not in dispute. Plaintiff is female and qualified for the job in question. As for the third prong, the parties dispute whether Plaintiff has alleged behavior which rises to the level of an adverse employment action. For the following reasons, I find that Plaintiff has sufficiently alleged that she suffered an adverse employment action through the inequitable distribution of accounts.

**i. Adverse Employment Action**

The Supreme Court has defined an adverse employment action as a “significant change in employment status, such as hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits.” *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 749 (1998). Although direct economic harm is generally regarded as an “important indicator of a tangible adverse employment action, it is not the sine qua non.” *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999). An adverse employment action may be found where “an action by an employer [ ] is ‘serious and

tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey*, 390 F.3d at 764 (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Moreover, an adverse employment action may also be found where an employer's act causes a substantial decrease in earning potential or significant disruption in working conditions. *Id.*

In the instant matter, Plaintiff alleges that: (1) Mr. Capin attempted to undermine her productivity by refusing to allow Tracy Zullo to join the Ostrowski team during the Spring of 2002; (2) Mr. Capin attempted to limit Plaintiff's ability to advertise for new business by editing her advertisement submissions in March of 2002; and (3) Plaintiff lost compensation because Mr. Kish favored the distribution of accounts to male Financial Advisors throughout 2001 and 2002.

I find that Plaintiff's first and second allegations do not rise to the level of an adverse employment action. The alleged behavior is not "serious and tangible" enough to alter Plaintiff's "compensation, terms, conditions, or privileges of employment." *Storey*, 390 F.3d at 764. Furthermore, Plaintiff has failed to submit evidence which demonstrates that these actions caused a substantial decrease in her earning potential or significant disruption in her working conditions. Plaintiff's third allegation, however, asserts a serious and tangible alteration to Plaintiff's compensation. Therefore, Plaintiff has sufficiently alleged that she suffered an adverse employment action through Mr. Kish's inequitable distribution of accounts to male Financial Advisors.

**ii. Inference of Discrimination**

Regarding the fourth prong of her *prima facie* case, Plaintiff has submitted

evidence of circumstances supporting an inference of discrimination. Namely, Plaintiff submitted evidence that Mr. Capin stated on several occasions that, "This is a man's business. It's a man's world." (Doc. 77, Ex. 3 at 29.) Further, Plaintiff submitted evidence that Mr. Capin "seemed to really resent Susan because she was a woman and because she was in a position of power." (Doc. 77, Ex. 3 at 24-25.) Lastly, Plaintiff submitted evidence that Mr. Capin and Mr. Buchler repeatedly referred to both Plaintiff and other women as "bitches". (Doc. 77, Ex. 5 at 36; Ex. 6 at 224.) I find this evidence sufficient to support an inference of discrimination. Therefore, Plaintiff has satisfied her burden of establishing a *prima facie* case. In accordance with *McDonnell Douglas,* the burden shifts to Defendant to provide a facially legitimate reason for the adverse employment action taken against Plaintiff.

**c. Non-discriminatory Reason**

An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial evidence." *Keller*, 896 F.2d at 797. To satisfy its burden, Defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, it must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.* Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendant are but a pretext, aimed at concealing Defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257).

Defendant asserts that account distribution was determined by a non-discriminatory process. Specifically, Defendant submitted evidence that accounts were distributed in the following fashion: (1) a computer system termed "HARP" generated a list of the accounts held by departing Financial Advisors, which was then posted; (2) each Financial Advisor was permitted to note the clients with whom (s)he had a relationship; (3) Tom Kish, the Administrative Manager, then allocated accounts based upon the strength of the relationships between the Financial Advisors and clients. (Doc. 47, Ex. 2 at 296-97, Ex. 3 at 136-39.) Furthermore, Defendant submitted evidence that as of August 2002, the HARP system became fully automated and distributed accounts to Financial Advisors according to past productivity. (Doc. 47, Ex. 2 at 300-301; Ex. 3 at 140.) Clearly, Defendant has satisfied the relatively light burden of production required under *McDonnell Douglas.* Thus, Plaintiff must establish that Defendant's articulated reasons are pretextual.

**d. Pretext**

To survive a summary judgment motion, Plaintiff must present "some evidence, direct or circumstantial, from which a fact-finder could reasonably either: (1) disbelieve [Defendant's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes*, 32 F.3d at 764. The Third Circuit Court of Appeals has held that Plaintiff may establish that Defendant's proffered reasons are "unworthy of credence," *Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 204 (3d Cir. 1987), by introducing evidence that the employer subjected individuals outside the protected class to more favorable treatment. *See, e.g.,*

*Fuentes*, 32 F.3d. at 765; *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 179; *Weldon*, 896 F.2d at 797. If Plaintiff successfully points to evidence sufficient to discredit Defendant's tendered reasons, Plaintiff need not submit additional evidence beyond the initial *prima facie* case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). Even where the majority of this evidence comes from uncorroborated deposition testimony, the Third Circuit Court of Appeals has held that this is sufficient to survive summary judgment. *Weldon*, 896 F.2d at 800.

Defendant argues that Plaintiff has failed to demonstrate that its non-discriminatory process is pretextual. I disagree. Plaintiff submitted evidence that Mr. Capin stated on several occasions that, "This is a man's business. It's a man's world." (Doc. 77, Ex. 3 at 29.) Plaintiff also submitted evidence that Mr. Capin "seemed to really resent Susan because she was a woman and because she was in a position of power." (Doc. 77, Ex. 3 at 24-25.) Further, Plaintiff submitted evidence that Mr. Capin was adamant that new accounts not be distributed to Plaintiff. (Doc. 77, Ex. 3 at 25.) Moreover, Plaintiff submitted evidence that Mr. Capin instructed Mr. Kish not to distribute accounts to Plaintiff. (Doc. 77, Ex. 3, at 31-32.) In addition, Plaintiff submitted evidence that Mr. Kish and Mr. Capin had a friendly relationship. (Doc. 47, Ex. 2 at 298.) Lastly, Plaintiff submitted evidence of a fax that was sent from Mr. Kish stating that an account was allocated incorrectly and should have gone to Mr. Capin. (Doc. 47, Ex. 2 at 299.)

Viewing the evidence in the light most favorable to Plaintiff, she has offered evidence from which a factfinder could reasonably disbelieve Defendant's articulated non-discriminatory process or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's account distribution.

Consequently, Defendant's motion for summary judgement will be denied with regard to Plaintiff's discrimination claims concerning the alleged inequitable distribution of accounts.

**CONCLUSION**

First, Plaintiff cannot aggregate her claims under a continuing violations theory. Furthermore, a hostile work environment claim could not reasonably be expected to grow out of Plaintiff's Charge of Discrimination filed with the EEOC. Therefore, Plaintiff's claims arising out of events prior to November 9, 2001, are barred for purposes of Title VII. Whereas, Plaintiff's claims arising out of events prior to April 20, 2002, are barred for purposes of the PHRA.

Second, although Plaintiff has submitted evidence of discriminatory comments and gestures, there is no evidence that these stray remarks and actions were made by decisionmakers in the course of the decisional process. Therefore, Plaintiff has failed to submit direct evidence of discrimination and, consequently, evaluation of Plaintiff's remaining disparate treatment claims must proceed in accordance with the *McDonnell Douglas* analytical framework.

In the instant matter, Plaintiff satisfied her burden of establishing a *prima facie* case under the *McDonnell Douglas* analytical framework. The first two prongs of Plaintiff's *prima facie* case are not in dispute. As for the third prong, Plaintiff sufficiently alleges that she suffered an adverse employment action through the inequitable distribution of accounts. Further, Plaintiff submitted evidence of circumstances supporting an inference of discrimination. Defendant then submitted evidence that

account distribution was determined by a non-discriminatory process. Thus, clearly satisfying its relatively light burden of production required under *McDonnell Douglas.* Lastly, Plaintiff submitted evidence from which a factfinder could reasonably disbelieve Defendant's articulated non-discriminatory process for account distribution, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's account distribution. Therefore, Defendant's Motion for Summary Judgment (Doc. 44) will be granted in part and denied in part.

An appropriate Order will follow.

May 12, 2006
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SUSAN OSTROWSKI,

Plaintiff,

v.

PRUDENTIAL EQUITY GROUP, LLC,

Defendant.

CIVIL ACTION NO. 3:03-CV-0459

(JUDGE CAPUTO)

**ORDER**

**NOW**, this ___12th_____ day of May, 2006, **IT IS HEREBY ORDERED** that Defendant's Motion For Summary Judgment (Doc. 44) is **GRANTED in part** and **DENIED in part**:

a. Defendants' motion is **GRANTED** insofar as it seeks summary judgment with respect to:

   i. Plaintiff's claims prior to November 9, 2001, for purposes of Title VII.

   ii. Plaintiff's claims prior to April 20, 2002, for purposes of the PHRA.

   iii. Plaintiff's inability to raise a Hostile Work Environment claim.

b. Defendants' motion is **DENIED** with respect to:

   i. Plaintiff's discrimination claims under Title VII and the PHRA regarding the unfair distribution of accounts.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge